UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAXON ENERGY, LLC                                    CIVIL ACTION

VERSUS                                                      NO. 22-940

ADMIRAL INSURANCE COMPANY                SECTION "R" (4)


**ORDER AND REASONS**


Before the Court is the motion for summary judgment of defendant Admiral Insurance Company ("Admiral").[1]  Plaintiff Jaxon Energy, LLC ("Jaxon") opposes the motion.[2]  The Court also considers Jaxon's cross-motion for partial summary judgment,[3] which Admiral opposes.[4]  Because Jaxon gave Admiral untimely notice of its claim under the terms of the insurance policy Admiral issued to Jaxon, the Court grants Admiral's motion and denies Jaxon's cross-motion.


**I.      BACKGROUND**

---

[1]      R. Doc. 18.
[2]      R. Doc. 23.
[3]      R. Doc. 21.
[4]      R. Doc. 24.

This dispute arises out of Admiral's denial of an insurance claim related to a diesel fuel spill that occurred on Jaxon's premises on May 7, 2020. Admiral issued an insurance policy to Jaxon, bearing Policy No. FEI-PPL-21343-04, which was in effect at the time of the spill.[5] It is undisputed that the policy covers 455 Industrial Drive in Jackson, Mississippi, the facility that was the site of the spill.[6] Admiral denied Jaxon's claim on the grounds that it was not timely filed in accordance with the terms of the policy.

Jaxon sued Admiral in the 21st Judicial District Court for the Parish of Tangipahoa premised on Admiral's denial of Jaxon's claim.[7] In the suit, Jaxon brought claims for breach of contract, detrimental reliance, and bad faith.[8] Admiral removed the action to federal court on the basis of diversity[9] and, after engaging in discovery, moved for summary judgment.[10] In its motion, Admiral contends that the Commercial General Liability portion of the policy it issued to Jaxon excludes coverage for property damage arising out of the release of pollutants. It further contends that although the Environmental Impairment Liability portion of the policy provides coverage

---

[5]   R. Doc. 18-6 at 1.
[6]   R. Doc. 18-2 ¶ 3 (Admiral's Statement of Uncontested Material Facts).
[7]   R. Doc. 1-1.
[8]   *Id.* at 3-5.
[9]   R. Doc. 1.
[10]   R. Doc. 18.

for environmental clean-up and remediation costs arising out of "pollution conditions," a condition precedent to coverage is that Jaxon must notify Admiral of the pollution condition within 21 days of its commencement.[11] Admiral argues that Jaxon was required to notify Admiral of the May 7, 2020 diesel spill by May 28, 2020, but it did not do so until early June 2020.[12]

Jaxon opposed Admiral's motion and cross-moved for summary judgment, contending that its claim should not be governed by the 21-day reporting requirement.[13]  Rather, Jaxon asserts that the policy required it to notify Admiral "as soon as practicable," which it did.[14]  Jaxon also argues that if the Court enforces the 21-day notification requirement, its untimeliness should be excused because Admiral suffered no prejudice from Jaxon's delay, and its delay was caused by the covid-19 pandemic.[15]  Admiral opposed Jaxon's motion.[16]

The Court considers the parties' arguments below.

---

[11]    R. Doc. 18-1 at 2.

[12]    Admiral contends that Jaxon notified Admiral of the incident on June 5, 2020,  eight days after Jaxon discovered the spill.  Jaxon does not confirm the date on which it gave notice, but contends it was "seven (7) to eight (8) days after the twenty-one day reporting period."  *See* R. Doc. 21-1 at 4.

[13]    R. Doc. 21.

[14]    R. Doc. 21-1 at 3.

[15]    R. Doc. 21-1 at 12-16.

[16]    R. Doc. 24.

## II.    LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of

fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for

resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  (quoting *Celotex*, 477 U.S. at 322)).

## III.  DISCUSSION

### A.      Jaxon's Breach-of-Contract Claim

#### 1.      Choice of Law

The policy at issue contains a choice-of-law clause that provides that "[a]ll matters arising hereunder including questions relating to the validity, interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practices of the State of New York."[17]  Federal courts sitting in diversity apply the choice-of-law rules of the forum state.  *Mumblow v. Monroe Broadcasting, Inc.*, 401 F.3d 616, 620 (5th Cir. 2005).  Under Louisiana law, contractual choice-of-law provisions are presumed valid, unless the chosen law "contravenes the public policy" of the state whose law would otherwise apply.  *See* La. Civ. Code art. 3540; *see also Barnett v. Am. Const. Hoist, Inc.*, 91 So. 3d 345, 349 (La. App. 1 Cir.

---

[17]      R. Doc. 18-6 at 20.

2012) ("A choice of law provision in a contract is presumed valid until it is proved invalid.").  In this case, neither party contests that New York law applies to Jaxon's breach-of-contract claim.

### 2.    Environmental Impairment Liability Coverage

"Under New York law, insurance policies are interpreted according to general rules of contract interpretation." *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 98-99 (2d Cir. 2012) (internal quotation marks omitted).  The words in a contract "should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *Id.* (quoting *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005)).

To determine a dispute over insurance coverage, New York courts "first look to the language of the policy," and "construe the policy in a way that affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect." *Consol. Edison Co. of N.Y., Inc. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 221-22 (N.Y. 2002).  The insured has the burden of proving coverage under an insurance policy.  *Id.* at 220.  "Once coverage is established, the insurer bears the burden of proving that an exclusion applies." *Id.*

The Environmental Impairment Liability portion of the policy provides two different timeframes in which pollution-related incidents must be reported to be eligible for coverage.  By its terms, Coverages A, B, and C of the Environmental Impairment Liability section cover onsite cleanup costs, offsite cleanup costs, and property damage and bodily injury to third parties arising from "pollution conditions"[18] that "migrat[e] from and extend[] beyond the boundaries of a Scheduled Location."[19]  This portion of the policy requires Jaxon to provide written notice of any such pollution condition to Admiral "as soon as practicable."[20]  The policy also includes an endorsement that specifically pertains to "sudden and unintended discharges of pollutants" that occur at "Scheduled Location(s)."[21]  By its terms, the endorsement modifies Coverages A, B, and C of the Environmental Impairment Liability section, and requires Jaxon to notify Admiral of a "sudden and unintended discharge" of pollutants no later than 21 days after

---

[18]   The policy defines "pollution condition" to mean "[t]he emission, discharge, dispersal, seepage, migration, release, or escape of pollutant(s) from, into or upon, land, any structure on land, the atmosphere, or any watercourse or body of water."  R. Doc. 18-6 at 11.

[19]   R. Doc. 18-6 at 6-7.

[20]   *Id.* at 22.

[21]   *Id.* at 89.

it begins, rather than "as soon as practicable," in order to be eligible for coverage.[22]

Jaxon does not contest that the May 7, 2020 overflow of diesel constituted a "sudden and unintended discharge" of pollutants. Rather, it contends that it was required to notify Admiral of the incident "as soon as practicable" rather than within 21 days. Jaxon's argument that its claim had to be submitted "as soon as practicable," rather than within 21 days, is meritless. By the terms of the endorsement, the 21-day reporting requirement applies to Jaxon's claim. The endorsement specifically pertains to "sudden and unintended discharges of pollutants" that occur at "scheduled locations."[23] Jaxon does not deny that 455 Industrial Drive in Jackson, MS, the site of the spill, is a "scheduled location," or that the release of diesel was "sudden and unintended." The endorsement itself states, in capital, boldfaced lettering, "**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**"[24] The language of the policy is clear that, for purposes of "sudden and unintended" discharges of pollutants at "Scheduled Locations" like the one at issue in this case, the endorsement, which "changes the policy," governs. To conclude otherwise

---

[22] *Id.*
[23] *Id.*
[24] *Id.*

would contravene the Court's obligation to "construe the policy in a way that affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect." *Consol. Edison Co. of N.Y.*, 98 N.Y.2d at 221-22 (internal quotation marks omitted)).

In support of its argument that the 21-day limit should not apply, Jaxon suggests—but does not expressly state—that it did not know about the 21-day deadline. In particular, Jaxon contends that "[i]t is unclear when the policy and/or the endorsements were actually provided to [Jaxon],"[25] that "the policy endorsement that limits the notice period to twenty-one days was not pointed out to the employee who handled the insurance policies for Jaxon," and that Jaxon generally did not "receive the actual policy and/or endorsements at the time that the policy was secured."[26] Notably, Jaxon cites to no evidence supporting its argument that it was unaware of its reporting obligations. Moreover, Admiral submits evidence that the endorsement that Jaxon claims to have been unaware of was also included

---

[25] R. Doc. 21-1 at 4, 16.

[26] *Id.* In particular, Jaxon notes that the policy was in effect from June 1, 2019 until June 1, 2020, but it was not actually issued until September 5, 2019, over three months after the beginning of the policy's effective date. But even assuming Jaxon was unaware of the terms of the contract until September 5, 2019, Jaxon's obligations to report the diesel spill were not triggered until months later, in May 2020, when the spill occurred.

in the policy Admiral issued to Jaxon the previous year.[27]  The endorsement in the previous year's policy contained an identical 21-day reporting requirement for "sudden and unintended discharges" of pollutants, and when that policy was nearing the end of its term, Jaxon asked Admiral to renew the policy.[28]  Jaxon's suggestion that the terms of the endorsement were unavailable to it is unsupported by the record.  Jaxon cannot use its purported ignorance of its contractual obligations as an excuse for noncompliance with the policy terms.  It is well settled that "[f]ailure to read a contract before agreeing to its terms does not relieve a party of its obligations under the contract."  *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012) (internal quotation marks omitted).

Jaxon also contends that the policy is ambiguous because "there is no explicit condition precedent language" in the policy.[29]  Under New York law, "a condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." *Bank of New York Mellon Trust Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 305 (2d Cir. 2016). "While specific, talismanic words are not required, the law nevertheless

---

[27]     R. Doc. 18-5 at 88.
[28]     R. Doc. 24-8 ¶ 10.
[29]     R. Doc. 21-1 at 4.

demands that conditions precedent be expressed in unmistakable language." *Id.* (internal quotation marks omitted).  New York courts have recognized that terms like "if," "on the condition that," "provided that," "in the event that," "subject to," and "unless and until" are "unmistakable language" indicating a condition precedent.  *Id.* (internal citations omitted).  Here, the endorsement states that coverage "***only applies provided that*** all of the following requirements are satisfied," and among those requirements is the 21-day reporting requirement.[30]  Further, "[u]nder New York law, . . . it is well settled that compliance with the notice provisions of an insurance contract is a condition precedent to an insurer's liability."  *United Nat. Ins. Co. v. 515 Ocean Ave., LLC*, 477 F. App'x 840, 843 (2d Cir. 2012).  That the endorsement does not use the "talismanic" term "condition precedent" is not controlling, nor does this inject ambiguity into the contract.  *Bank of New York Mellon Trust Co.*, 821 F.3d at 305.

In sum, the unambiguous terms of the policy required Jaxon to notify Admiral of the diesel spill within 21 days from the commencement of the spill, and it is undisputed that Jaxon did not do so.  Jaxon contends that even if it is bound by the 21-day reporting requirement, Admiral should not have denied coverage because (1) Jaxon's failure to meet the 21-day deadline was

---

[30]    R. Doc. 18-6 at 89.

reasonable in light of the covid-19 pandemic, and (2) Admiral suffered no prejudice from Jaxon's delay.   But Jaxon provides no evidence to substantiate its claim that the pandemic prevented it from notifying Admiral of the incident.   Indeed, Jaxon asserts that it "immediately" sprang into action upon noticing the spill by contacting environmental agencies, the city of Jackson, and local environmental clean-up companies.[31]   Indeed, the "Jaxon Energy Spill Response Summary," a timeline of Jaxon's spill remediation efforts that Jaxon submits in connection with its cross-motion for summary judgment, indicates that Jaxon began contacting third parties of the spill on May 7, 2020, the day the spill occurred, and that the cleanup process was projected to be completed by May 15, 2020, just eight days later.[32]   Jaxon's evidence that it immediately notified other parties demonstrates that the pandemic was no barrier to its reporting the incident to Admiral.

Nor is the issue of whether Admiral suffered prejudice from Jaxon's delay relevant to the issue of coverage.  Jaxon relies on New York Insurance Law § 3420(a)(5), which provides, in relevant part:

> No policy or contract insuring . . . against liability for injury to, or destruction of, property shall be issued or delivered in this state, unless it contains in substance the following provisions or

---

[31]   R. Doc. 21-1 at 2, 5.
[32]   R. Doc. 21-5 at 4.

> provisions that are equally or more favorable to the insured . . . :
> [a] provision that failure to give any notice required to be given
> by such policy within the time period prescribed therein shall not
> invalidate any claim made by the insured, injured person or any
> other claimant, unless the failure to provide timely notice has
> prejudiced the insurer[.]

N.Y. Ins. Law § 3420(a)(5). Jaxon argues that because New York law applies to the policy, Admiral must show prejudice in order to enforce the 21-day reporting requirement. But by its own terms, § 3420(a)(5) applies only to insurance policies that are "issued or delivered in this state." *Id.* Courts have repeatedly "declined to apply § 3420 outside the geographic scope dictated by the statutory language." *Indian Harbor Ins. Co. v. City of San Diego*, 586 F. App'x 726, 728-29 (2d Cir. 2014) ("If the New York legislature had intended to change the common law for all policies [in enacting § 3420(a)], it could have done so."). For example, in *Indian Harbor*, the insured invoked § 3420(a)(5) in support of its argument that its insurer improperly denied coverage because the insurer had not shown that it was prejudiced by the insured's delay. *Id.* at 727-28. The Second Circuit concluded that because the insured had "proffered no evidence to show that the policy was issued, or even signed, in New York," it was governed by New York's "common-law no-prejudice rule" rather than § 3420(a)(5). *Id.* at 728-29.

Admiral states as an uncontested fact that the policy at issue here was issued to Jaxon in Louisiana,[33] which Jaxon does not contest.  Further, Jaxon offers no evidence that the policy was issued in New York.  Accordingly, the common-law no-prejudice rule applies.  *Id.*  Under that rule, "an insurer that does not receive timely notice in accordance with a policy provision may disclaim coverage, whether it is prejudiced by the delay or not."  *Briggs Ave. LLC v. Ins. Corp. of Hanover*, 11 N.Y.3d 377, 381-82 (N.Y. 2008).  "While this rule produces harsh results in some cases, it also, by encouraging prompt notice, enables insurers to investigate claims promptly and thus to deter or detect claims that are ill-founded or fraudulent."  *Id.* at 842-43; *see also United Nat. Ins. Co.*, 477 F. App'x at 843 ("[T]he right of an insurer to receive notice has been held to be so fundamental that the insurer need show no prejudice to be able to disclaim liability on [the] basis [that the insured did not comply with notice provisions].").

But even if Jaxon were correct that it had to notify Admiral "as soon as practicable," rather than within 21 days of the commencement of the diesel spill, it did not do so.  "Where an insurance policy requires that notice of an

---

[33]  R. Doc. 18-2 ¶ 1 (Admiral's Statement of Uncontested Material Facts) ("Admiral Insurance Company . . . issued and delivered package policies to Jaxon Energy Services, LLC, P.O. Box 784, Roseland, Louisiana, 70456.").

occurrence be given 'as soon as practicable,' notice must be given within a reasonable time in view of all of the circumstances." *Ponok Realty Corp. v. United Nat'l Specialty Ins. Co.*, 69 A.D.3d 596, 596-97 (2d Dep't 2010). "[T]he burden is on the insured to demonstrate that any delay was reasonable under the circumstances." *United Nat'l Ins. Co.*, 477 F. App'x at 843. "In the absence of an excuse, such as genuine lack of knowledge that an incident or accident has occurred, New York courts interpret late-notice provisions rather stringently, and have found relatively short periods [of delay] to be unreasonable as a matter of law." *Id.* (internal quotation marks omitted) (collecting cases).

In this case, Jaxon notified multiple other entities of the diesel spill "immediately after discovering the release"[34]—as discussed earlier, the timeline of Jaxon's spill response efforts indicates that Jaxon notified third parties of the spill the same day it occurred and anticipated that cleanup efforts would be completed by May 15, 2020, just eight days later, almost two weeks before the end of the 21-day reporting period.[35]  Jaxon nevertheless waited nearly a month after the spill before notifying Admiral.  Jaxon has identified no evidence suggesting it was not practicable to notify Admiral

---

[34]     R. Doc. 33 at 5.
[35]     R. Doc. 21-5 at 4.

when it notified others about the incident. *Compare Agoado Realty Corp. v. United Int'l Ins. Co.*, 95 N.Y.2d 141, 144, 146-47 (2000) (finding issue of fact as to whether notice was given "as soon as practicable" where the Secretary of State sent documents to insureds' lawyer, who had died, and insureds claimed they did not know of his death). It has thus failed to meet its burden of demonstrating that its delay was "reasonable under the circumstances." *United Nat. Ins. Co.*, 477 F. App'x at 843.

Because an insured's "failure to satisfy the notice requirement constitutes a failure to comply with a condition precedent which, as a matter of law, vitiates the contract," *Ponok Realty Corp.*, 69 A.D. at 597, the Court holds that Admiral was not required to cover Jaxon's claim under the Environmental Impairment Liability section of the policy. Jaxon has failed to meet its burden of establishing that its claim is covered, nor has it identified an issue of fact in support of its argument that its failure to timely report its claim ought to be excused.

### 3. Commercial General Liability Coverage

The Court likewise holds that Admiral had no obligation to cover Jaxon's claim under the Commercial General Liability section of the policy. The Commercial General Liability section expressly excludes coverage for

"property damage" that "aris[es] out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants."[36] That portion of the policy also excludes

> [a]ny loss, cost, or expense arising out of any . . . [r]equest, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, 'pollutants,' or . . . [c]laim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, 'pollutants.'

"To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Westview Assoc. v. Guaranty Nat'l Ins. Co.*, 95 N.Y.2d 334, 340 (N.Y. 2000). Admiral has carried this burden—Admiral contends, and Jaxon does not dispute, that the claim is premised on "property damage" that "arises out of" the "actual . . . release . . . of pollutants." Rather, Jaxon argues that the exclusion is not enforceable.

Pollution exclusion clauses should be construed "in light of [their] general purpose, which is to exclude coverage for environmental pollution." *Stoney Run Co. v. Prudential-LMI Commercial Ins. Co.*, 47 F.3d 34, 37 (2d

---

[36]   R. Doc. 18-6 at 26.

Cir. 1995).  It is well-settled under New York law that pollution exclusions like the one at issue here are enforceable in "cases where the damages alleged are truly environmental in nature, or where the underlying complaint alleges damages resulting from what can accurately be described as the pollution of the environment." *Belt Painting Corp. v. TIG Ins. Co.*, 293 A.D.2d 206, 210-11 (2d Dep't 2002) (collecting cases); *see also Town of Harrison v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 89 N.Y.2d 308, 313 (N.Y. 1996) ("[C]overage is unambiguously excluded [by pollution exclusion] for claims generated by the dumping of waste onto complainants' properties as asserted in all of the underlying complaints[.]"); *cf. Westview Assoc.*, 95 N.Y.2d at 340 (pollution exclusion did not apply to claim premised on infant's exposure to lead paint); *Karroll v. Atomergic Chemetals Corp.*, 194 A.D.2d 715 (N.Y. 1993) (pollution exclusion clause did not apply to injuries suffered by a bulldozer who was accidentally sprayed with sulfuric acid because the clause could be "reasonably interpreted to apply only to instances of environmental pollution").  Jaxon does not dispute that the damages resulting from the spill "are truly environmental in nature." *Belt Painting Corp.*, 293 A.D.2d at 210-11.  The exclusion is thus enforceable.

Jaxon also argues that the term "pollutant" is ambiguous.  Here, policy defines "pollutant" as

"[a]ny solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, hazardous substances, waste materials, including materials to be recycled, reconditioned or reclaimed, including but not limited to, medical, infectious and pathological waste, low-level radioactive waste and material, silt, sedimentation, petroleum hydrocarbons, methamphetamines, electromagnetic fields and Legionella pneumophila, at levels in excess of those naturally occurring; and mold matter.

Notably, Jaxon does not contend that diesel fuel does not constitute a "pollutant." Indeed, such an assertion would be at odds with its contention that it is entitled to coverage for a "pollution condition." Jaxon has failed to identify an ambiguity in the policy as it applies to this dispute. The Court thus holds that there is no coverage for Jaxon's claim under the Commercial General Liability portion of the policy.

## B.    Jaxon's Remaining Claims

Admiral also moves for summary judgment as to Jaxon's claims for detrimental reliance under La. Civ. Code art. 1967 and bad faith under La. Rev. Stat. §§ 22:1973, 22:1892.[37] The Court grants Admiral's motion as to each of these claims.

---

[37]    Neither party contends that New York law applies to Jaxon's claims for detrimental reliance and bad faith, and "the Fifth Circuit has narrowly construed choice of law clauses so as to only apply to contract claims, and not tort claims arising out of the contractual dispute." *El Pollo*

La. Civ Code art. 1967 states that "[a] party may be obligated by a promise when he knew or should have known that the premise would induce the other party to rely on it to his detriment and the other person was reasonable in so relying." To establish a claim for detrimental reliance under La. Civ. Code art. 1967, a plaintiff must demonstrate (1) a representation by conduct or word, (2) made in such a manner that the promisor should have expected the promisee to rely on it, (3) justifiable reliance by the promise, and (4) a change to the promisee's detriment because of the reliance. *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 334 (5th Cir. 2007). The doctrine is "designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence." *Blackstone v. Chase Manhattan Mortg. Corp.*, 802 F. Supp. 2d 732, 739 (E.D. La. 2011). Claims of detrimental reliance are "not favored in Louisiana [and] detrimental reliance claims must be examined carefully and strictly." *In re Ark-La-Tex Timber Co.*, 482 F.3d at 334.

The premise of Jaxon's claim for detrimental reliance is that it reasonably relied on the policy's coverage of claims related to pollution conditions to its detriment by making premium payments. But Jaxon does

---

*Loco, S.A. de C.V. v. El Pollo Loco, Inc.*, 344 F. Supp. 2d 986, 989 (S.D. Tex. 2004). The Court thus assesses these claims under Louisiana law.

not argue, much less provide evidence to create an issue of fact, that Admiral ever represented that such claims would be covered regardless of whether Jaxon timely submitted notice of its claims in accordance with the terms of the policy.  To the contrary, the policy explicitly states that coverage for "sudden and unintended discharges of pollutants" at scheduled locations "only applies provided that" Jaxon timely informs Admiral of the incident. Accordingly, Jaxon has failed to establish "a representation by conduct or word" on which it reasonably relied.  *In re Ark-La-Tex Timber Co.*, 482 F.3d at 334.  The Court thus grants Admiral's motion as to Jaxon's claim for detrimental reliance.

The same is true for Jaxon's claim of bad faith.  Louisiana Revised Statutes sections 22:1982 and 22:1973 "allow plaintiffs to recover punitive damages when insurers arbitrarily or capriciously fail to pay a claim." *Lee v. State Farm Fire & Cas. Co.*, 2022 WL 14054181, at *2 (W.D. La. Oct. 24, 2022).  Both statutes "are penal in nature and thus must be strictly construed."  *Id.* (citing *Reed v. State Farm Mut. Auto Ins Co.*, 857 So. 2d 1012, 1020 (La. 2003)).  The conduct prohibited by both statutes is "virtually identical: the failure to timely pay a claim after receiving satisfactory proof of loss when that failure to pay is arbitrary, capricious, or without probable cause." *Hibbets v. Lexington Ins. Co.*, 377 F. App'x 352, 355 (5th Cir. 2010).

Jaxon's claim for bad faith fails for the same reasons its other claims failed: Jaxon has failed to establish that it was entitled to coverage for its claim despite its noncompliance with its contractual requirement to submit timely notice of its claim.  Jaxon has failed to establish that Admiral had a duty to pay its claim, nor has it created an issue of fact as to whether Admiral's refusal to pay was "arbitrary, capricious, or . . . vexatious." *Jones v. Gov't Empl. Ins. Co.*, 220 So. 3d 915, 922 (La. App. 4th Cir. 2017).  The Court thus grants Admiral's motion as to this claim, as well.

## IV.   CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Admiral's motion for summary judgment and DENIES Jaxon's cross-motion for partial summary judgment.  Jaxon's claims are hereby DISMISSED with prejudice. The Court also DISMISSES AS MOOT the parties' joint motion to continue the pre-trial conference and trial date in this matter.

New Orleans, Louisiana, this   14th   day of March, 2023.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE